

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00093-CR

AVERY ANTWINE                                          APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1368337D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Avery Antwine appeals his conviction for aggravated assault with a deadly weapon. The jury assessed his punishment at fifteen years in prison, and the trial court sentenced him accordingly. In two issues, Appellant contends that trial counsel rendered ineffective assistance and that the trial court erred by excluding evidence. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Appellant's first issue, he asserts that trial counsel rendered ineffective assistance. Appellant initially pled not guilty. After one day of testimony, he decided to change his plea to guilty. Appellant contends he changed his plea based upon incorrect legal advice from counsel.

### Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*,

466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

**Discussion**

Regarding the reasons Appellant changed his plea from not guilty to guilty, the motion for new trial did not allege ineffective assistance of counsel; consequently, there was no hearing during which defense counsel was given an opportunity to explain her position. However, at trial, before Appellant changed his plea, defense counsel asked Appellant the following questions on the stand,

> [DEFENSE COUNSEL:] Is your name Avery Antwine?
>
> A. Yes.

3

Q. Avery, you and I have had an opportunity to discuss this case at—at length last night and prior to that and then today, correct?

A. Yes.

Q. And I advised you that certain testimony that we had posed to put in through other witnesses was not going to be admissible, and therefore, the defense that we have raised of self-defense was not going to be able to be put on in our case in chief. You and I talked about that?

A. Yes.

Q. Okay. And based on the fact that character—I mean, witnesses as to the complainant's past, bad acts and all of that could not be admissible, and you elected to change your plea so that you could discuss in front of the jury why you acted the way you did that day?

A. Yes.

Q. Okay. And you've done this voluntarily. You understand—you understand that no longer is the Judge going to assess the punishment, but the jury is going to be instructed to assess the punishment?

A. Yes.

Q. And that they can give you anywhere between 2 years up to 20 years?

A. Yes.

Q. And are you satisfied with the representation I've had with you in this case?

A. Yes.

[DEFENSE COUNSEL]: Pass the witness.

Moments later, Appellant entered a formal plea of guilty.

4

On appeal, Appellant contends that defense counsel gave him erroneous advice. First, Appellant was not required to testify during the trial on guilt/innocence if he were able to raise the issue of self-defense through some other evidence. *See Ortega v. State*, 207 S.W.3d 911, 919 (Tex. App.—Corpus Christi 2006 no pet.) (holding that issue of self-defense may be raised by evidence other than the defendant's testimony). This argument appears directed more at earlier statements made by the trial judge than at anything defense counsel told Appellant on the record. The trial court had earlier stated that Appellant's requested evidence was premature because Appellant had not yet testified regarding having had any fear of Complainant. Second, Appellant maintains the history of his relationship with Complainant as well as Complainant's violent and aggressive character were potentially admissible. *See* Tex. R. Evid. 404(a)(3)(A).

Under section 9.31 of the penal code, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (West 2011). However, "[t]he use of force against another is not justified . . . if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was" unlawfully carrying a weapon under penal code section 46.02. *Id.* § 9.31(b)(5)(A). "A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about

5

his or her person a handgun . . . if the person is not: (1) on the person's own premises or premises under the person's control." *Id.* § 46.02(a)(1) (West Supp. 2016).

Defendants bear the burden of production of some evidence supporting the justification of self-defense. *Lay v. State*, 359 S.W.3d 291, 297 (Tex. App.—Texarkana 2012, no pet.). Once the evidence raises a defensive issue, defendants have the right to an instruction whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court thinks about the credibility of the defense. *Id.* However, when the evidence, viewed in the light most favorable to a defendant, establishes as a matter of law that force is not justified in self-defense, no self-defense issue is required. *Id.*

The State's version of the evidence was primarily from Complainant's sister. Complainant himself did not testify. His sister testified that in the early morning hours of April 5, 2014, Complainant walked out the front door of their apartment. Immediately after Complainant closed the door, she heard multiple gunshots and saw Complainant run back inside their apartment and fall down. She testified that Appellant then followed Complainant into their apartment, fired several more times at Complainant as Complainant crawled on the floor, and then left.

Based upon Appellant's testimony during the punishment phase, Appellant's version of the evidence was that when he returned to his apartment on April 5, 2015, his girlfriend and the neighbor across the hall both told him that

6

Complainant had burglarized his apartment. Complainant stole some cash and marijuana. Appellant then drove to Complainant's apartment, parked his car, and started walking to Complainant's apartment. When asked why Appellant went to Complainant's apartment, Appellant answered, "I was going to see what was going on." Appellant saw Complainant pointing a gun at him. Appellant shot first. Appellant maintained all the shooting occurred outside and denied going inside the apartment. Appellant stated that he was aware that Complainant had robbed Appellant's best friend at gunpoint, that he was afraid of Complainant, and that he thought Complainant was capable of shooting him. Because Appellant went to Complainant's apartment with a gun to confront him about the burglary, even under Appellant's version of the events, he was not entitled to a self-defense instruction. *See id.* at 298; *Williams v. State*, 35 S.W.3d 783, 787 (Tex. App.—Beaumont 2001, pet. ref'd).

Based on the record, Complainant's sister was not in a position to see what occurred outside. She could not provide Appellant with evidence supporting self-defense. Even if Appellant's girlfriend and neighbor testified, the most they could say would be that Complainant burglarized Appellant's apartment, so Appellant went to Complainant's apartment. Because Appellant went to Complainant's apartment with a gun, even their testimony would not have entitled Appellant to a self-defense instruction. As noted earlier, Complainant himself did not testify. If Appellant had testified during the guilt/innocence phase, his own testimony would have precluded a self-defense instruction.

7

Once it became clear that Appellant would not get a self-defense instruction (whether he testified or not), Appellant had to choose between (1) keeping his plea of not guilty and risk getting convicted on the State's evidence or (2) changing his plea to guilty and testifying during the punishment phase of trial to get his side of the story out. Pleading not guilty and testifying during the guilt/innocence phase in a manner that only proved his guilt might have served only to antagonize the jury. Conversely, where the State's evidence is strong, as here, changing his plea to guilty, thereby enhancing the perception of acceptance of responsibility, and testifying during the punishment phase to show mitigating circumstances would be a plausible trial strategy.

Although the dialogue between defense counsel and Appellant is muddled, the gist of it is not—Appellant was not going to get a self-defense instruction. Implicit in the exchange was that absent a self-defense instruction, Appellant was not going to fight his guilt. Also implicit in the exchange was that Appellant thought he had mitigating circumstances that he wanted the jury to know about. Contextually, the mitigating circumstances related to punishment, not guilt. Counsel has not had an opportunity to fully explain what went into the decision to explain the change in Appellant's plea or to address the complained-of dialogue between her and Appellant shortly before he changed his plea to guilty. We decline to speculate about the reasons underlying counsel's decisions. *See Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). On this record, we cannot say that defense counsel's challenged conduct

was so outrageous that no competent attorney would have engaged in it. *See Nava*, 415 S.W.3d at 308.

We have no record evidence of counsel's reasoning behind her actions or inactions. Appellant's motion for new trial did not allege ineffective assistance. There was no hearing at which counsel was allowed to defend herself. Because counsel's reasons for her conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions. *See Bledsoe v. State*, 479 S.W.3d 491, 497 (Tex. App.—Fort Worth 2015, pet. ref'd) (citing *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007)).

To the extent that Appellant argues that his plea was involuntary based upon bad advice, Appellant would have to show that he would not have pled guilty but for the erroneous advice of counsel. *See Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012) ("In the context of [an] involuntary plea, the 'different outcome' is choosing not to plead and instead choosing to go to trial."). On this record, Appellant has not shown that his plea was involuntary.

We overrule Appellant's first issue.

### EXCLUSION OF EVIDENCE

Appellant's second issue is related to his first. In his second issue, he contends that the trial court abused its discretion by refusing to allow him to develop testimony about how Complainant possessed firearms and had a history of drugs, both of which were germane to raising the issue of his self-defense.

Appellate courts review a trial court's evidentiary rulings for an abuse of discretion. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). We uphold the trial court's ruling if it lies within the zone of reasonable disagreement. *Id.* If the trial court's ruling was correct under any theory of law applicable to the case, we will uphold the decision. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).

A defendant can admit evidence of a complainant's character for violence in two situations: (1) to show he reasonably believed the force he used was immediately necessary to protect himself from the complainant, and (2) to show the complainant was the first aggressor. *Mozon v. State*, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999). Both reasons relate to the issue of self-defense. *Id.* As explained in Appellant's first issue, self-defense was not an issue available to Appellant. Because the evidence would not have helped establish that Appellant acted in self-defense, we hold that the trial court did not abuse its discretion by excluding it. *See* Tex. R. Evid. 402.

We overrule Appellant second issue.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

10

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 17, 2016