

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-17-00089-CR

RICHARD MORENO GOMEZ A/K/A
RICHARD GOMEZ

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR13456

----------

## MEMORANDUM OPINION[1]

----------

Appellant Richard Moreno Gomez, a/k/a Richard Gomez, appeals from his conviction for felony driving while intoxicated and sentence of eighty-five years' confinement. Gomez asserts that his counsel was constitutionally ineffective for failing to object to the State's closing jury argument. Because the undeveloped record does not allow us to second-guess counsel's strategic choices and

---

[1]*See* Tex. R. App. P. 47.4.

because the challenged argument was a proper plea for law enforcement, we cannot conclude that counsel's performance was unconstitutionally deficient and, therefore, affirm.

On February 7, 2016, at "approximately 1:24 a.m.," Granbury Police Officer Dustin Causey stopped the car Gomez was driving and "smell[ed] the odor of an alcoholic beverage emitting from his breath as he spoke to [Causey]." Gomez admitted he had consumed "a 12-pack of beer prior to the stop," which he had finished less than thirty minutes before Causey stopped him. Gomez failed the field-sobriety tests, and Causey arrested Gomez for driving while intoxicated. A blood test revealed that Gomez's blood-alcohol concentration was 0.19—over twice the legal limit of 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

A grand jury indicted Gomez for felony driving while intoxicated based on his 1990 and 2006 convictions for driving while intoxicated. *See id.* § 49.09(b)(2) (West Supp. 2017). The indictment further included two habitual-offender paragraphs, which as alleged rendered the charged felony offense punishable as a first-degree felony: (1) Gomez had been finally convicted of felony assault involving family violence in 2009 and (2) Gomez had been finally convicted of aggravated assault with a deadly weapon in 1997. *See id.* § 12.42(d) (West Supp. 2017).

Gomez pleaded guilty to felony driving while intoxicated but pleaded not true to the habitual-offender paragraphs. At his jury trial on punishment, Gomez

2

testified and apologized to Causey and the community for driving while intoxicated on February 7, 2016. He agreed that if Causey had not stopped him, he was afraid of what could have happened. He thanked Causey for saving his and others' lives. Gomez recognized that driving while intoxicated is dangerous and that he could have hurt or killed someone. But he testified that he did not know "how to answer" whether his 1997 aggravated-assault conviction and 2009 assault conviction were true because he "was a kid [and] didn't know the law then." The State introduced verified copies of the judgments of conviction in those two cases.[2]

During the State's closing jury arguments, the prosecutors urged the jury, without objection, to assess Gomez's punishment at ninety-nine years' confinement to prevent other drunk-driving victims:

> When the defendant spoke to Officer Causey, that . . . also really stuck with me, because that's what I was really thinking during this whole trial, is thanking him for not only saving this defendant's life but who knows how many countless other lives that night. In this job, I get to work with people who have been seriously injured by drunk drivers and families who have lost loved ones to drunk drivers, and those people, for the rest of their lives, think, "What - - if only that night could have just be [sic] a little different. . . ." And I just think about the night of this offense and how many of those prayers were answered that night, how many people were saved that night.
>
>     . . . .

---

[2]In the family-violence conviction, Gomez was sentenced to twenty years' confinement. He was placed on community supervision for the 1997 aggravated assault; however, the trial court subsequently revoked it and sentenced Gomez to eight years' confinement.

. . . [H]ow many times have [drunk-driving victims] not survived, and how many of those victims' loved ones have prayed the heartbroken, agonizing prayer, "My God, my God, why did they not leave five minutes later?  Why didn't they hesitate a moment, an instant longer, until they rushed out the door that morning, or that afternoon, or that evening?"

. . . I don't know that there are answers for those kinds of prayers, at least not the kind that you or I can understand just yet, but what you've been given today on this jury is something special.  You've been given the chance to take a habitual felon, a serial drunk driver off the road.  What you've been given is so much more than that, because what you've really been given is the amazing opportunity to answer those heartbroken prayers yourself.  Answer them before they're even prayed, - -

. . . .

. . . to dispense mercy before it's even needed, to heal the heart before it's even hurt, and to sew up the souls of those loved ones before they're even saddened.  We ask that you sentence Mr. Gomez to 99 years, because now that you've been given this opportunity, now that you've been given this chance to answer those prayers, I ask you, "What will you do with it?"

The jury found Gomez guilty of felony driving while intoxicated, found the habitual-offender paragraphs true, and assessed his sentence at eighty-five years' confinement.  *See* Tex. Penal Code Ann. § 12.32 (West 2011); Tex. Code Crim. Proc. Ann. art. 26.14 (West 2009).  The trial court sentenced Gomez in accordance with the jury's verdict.  Gomez filed a motion for new trial, arguing that the verdict was "contrary to the law and the evidence," which was deemed denied.  *See* Tex. R. App. P. 21.3(h), 21.8(c).  On appeal, Gomez argues that counsel was constitutionally ineffective for failing to object to the State's jury argument because (1) "no evidence was presented during the trial about prayer,

4

or people praying or accidents that were prevented" and (2) the comments "were clearly intended to 'inflame' the [spiritual] passions of the jurors against the Defendant."[3]

To establish ineffective assistance of counsel, Gomez must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bledsoe v. State*, 479 S.W.3d 491, 497 (Tex. App.—Fort Worth 2015, pet. ref'd). A claim of ineffective assistance must be "firmly founded in the record," and counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Here, there is no record evidence to explain counsel's inaction during the State's jury argument, which could have been grounded in legitimate trial strategy; thus, we defer to counsel's decisions. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Additionally, the State's jury argument clearly

---

[3]Evidence is, by necessity, prejudicial; the admissibility rules merely proscribe unfair prejudice. *See Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993) ("'Unfair prejudice' does not, of course, mean that the evidence injures the opponent's case—the central point of offering evidence."). Similarly, effective closing jury argument necessarily will be somewhat inflammatory. But it may not be so inflammatory that it deprives the defendant of a fair trial. *See, e.g.*, *Boyde v.* State, 513 S.W.2d 588, 590–93 (Tex. Crim. App. 1974).

was an appropriate plea for law enforcement and a reasonable deduction from Gomez's testimony. *See, e.g.*, *Strahan v. State*, 358 S.W.2d 626, 627 (Tex. Crim. App. 1962); *Waters v. State*, 330 S.W.3d 368, 375–77 (Tex. App.—Fort Worth 2010, pet. ref'd). We cannot conclude that counsel's failure to object to permissible jury argument was constitutionally deficient performance. *See Goodspeed v. State*, 167 S.W.3d 899, 904 (Tex. App.—Texarkana 2005, no pet.).

Because the record is undeveloped regarding counsel's strategic choices and because counsel's performance cannot be deficient for failing to object to permissible jury argument, we overrule Gomez's points and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: WALKER, GABRIEL, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 25, 2018